UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW JAMES KOONTZ,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　　Defendant. | Civil No. 08-2153-LAB(WVG)<br><br>REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. Nos. 18, 19) |

　　　Plaintiff Matthew James Kontz (hereafter "Plaintiff"), filed a Complaint For Judicial Review And Remedy On Administrative Decision Under The Social Security Act [42 U.S.C. §405(g)]. Defendant Michael J. Astrue (hereafter "Defendant"), filed an Answer to the Complaint and the administrative record (hereafter "Tr."), pertaining to this case. Plaintiff has filed a Motion for Summary Judgment. Defendant has filed an Opposition to Plaintiff's Motion for Summary Judgment and a Cross-Motion for Summary Judgment.

　　　The Court, having reviewed Plaintiff's Motion for Summary Judgment, Defendant's Opposition to Plaintiff's Motion for Summary Judgment, Defendant's Cross-Motion for Summary Judgment and the

administrative record filed by Defendant, hereby finds that Plaintiff is not entitled to the relief requested and therefore RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's Motion for Summary Judgment be DENIED.

I

PROCEDURAL HISTORY

On December 2, 2005, Plaintiff filed applications for adult child's disability insurance benefits and supplemental security income, alleging that he was disabled since March 1, 1994. (Tr. 109-127). Plaintiff had received disability benefits as a child, but those benefits terminated upon his attaining age 18 in March 2006. The Commissioner of Social Security denied his applications initially and upon reconsideration. (Tr. 53-56). Thereafter, Plaintiff requested a hearing. On March 13, 2008, a hearing was held at which Plaintiff appeared with counsel and testified before an Administrative Law Judge (hereafter "ALJ") (Tr. 17-52). On March 27, 2008, the ALJ found that Plaintiff was not disabled during the relevant time period, on and after his 18th birthday in March 2006, because given his residual functional capacity for repetitive work, he could perform a significant number of jobs in the occupations of packager and linen attendant. (Tr. 9-16). The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review. (Tr. 1-3).

II

SUMMARY OF APPLICABLE LAW

Title II of the Social Security Act (hereinafter "Act"), as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical

or mental disability. 42 U.S.C. § 423 (a)(1)(D). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382 (a). Both titles of the Act define disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months..." Id. The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. Id.

The Secretary of the Social Security Administration has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. 20 C.F. R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. That determination is governed by the "severity regulation" at issue in this case. The severity regulation provides in relevant part:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience. §§ 404.1520(c), 416.920(c).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking;" "[u]nderstanding, carrying out, and remembering simple instructions; "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers, and usual work situations;" and "[d]ealing with changes in a routine work setting." Id.

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his previous work, the fifth and final step of the process determines whether he is able to perform other work in the national economy in view of his age, education, and work experience.

The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

## III

## ALJ'S FINDINGS

The ALJ made the following pertinent findings:

    1. (Plaintiff) was born on March 1, 1988 and became age 18 on March 1, 2006.[1]

    2. The period of adjudication begins on March 1, 2006 when (Plaintiff) turned 18.

    3. (Plaintiff) has not engaged in substantial gainful activity since March 1, 2006.

    4. (Plaintiff) has the following severe impairments: attention deficit hyperactivity disorder, learning disorder NOS, Tourette's syndrome and a depressive disorder.

    (Plaintiff) has been diagnosed with, and treated for, the above named impairments which cause more than a minimal limitation in his ability to perform sustained work activity.

    (Plaintiff's) alleged mixed receptive expressive language disorder and developmental disorder are nonsevere as they do not significantly limit (his) ability to perform work related activities.

    5. (Plaintiff) has not had an impairment or combination of impairments that meets or medically equals a listed impairment.

    In activities of daily living, (Plaintiff) has no restriction. In social functioning, (Plaintiff) has no difficulties. With regard to concentration,

---

[1] Fed. R. Civ. Pro. 5.2 states in pertinent part:
    (a)... in an electronic or paper filing with the court that contains an individual's... birth date... a party or non-party making the filing may include only:
    ...
        (2) the year of the individual's birth
    ...
    (b) The redaction requirement does not apply to the following:
    ...
        (2) the record of an administrative or agency proceeding.

Here, Plaintiff's birth date is prominently noted in the administrative record because it is the start date upon which Plaintiff claims benefits are due him.

persistence or pace, (Plaintiff) has experienced one or two episodes of decompensation.

6. After careful consideration of the entire record, the undersigned finds that, since attaining age 18, (Plaintiff) can perform simple repetitive tasks.

(Plaintiff) alleges disability due to his impairments, including his symptoms of random outbursts, making loud noises at random, and low reading ability.

After considering the evidence in the record, the undersigned finds that (Plaintiff's) medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, (his) statements concerning intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons stated below.

At the hearing, the medical expert, Dr. Sherman, a board certified psychiatrist, testified to her thorough review of the medical record. Dr. Sherman stated that (Plaintiff) suffers from a learning disorder NOS which is mild and is primarily in reading, spelling and mathematics. Further, his IQ has been tested by Dr. Whitehead in 2006 and it is normal with a described learning disorder. (Plaintiff) suffers from Tourette's syndrome which is being maintained with medication and is considered mild. Moreover, there are school reports which indicate that (Plaintiff) is sweet, courteous and well behaved. However, he does have a history of vocal ticks in his school records.

Dr. Sherman specifically discussed the report from Dr. Whitehead, a licensed psychologist, who diagnosed (Plaintiff) with a learning disability NOS, a reported treatment history of ADHD, depression and Tourette's syndrome. He noted that (Plaintiff) had a GAF of 70-80. Dr. Whitehead stated that (Plaintiff's) full scale IQ score was in the average range as was his verbal and performance scores. His working memory index score indicated an ability to use concentration, attentional abilities and memory process in the low average range. His reading was at the 5th grade level, his spelling was at the 6th grade level and his arithmetic was at the 5th grade level. Dr. Whitehead stated that he did not observe any signs of ADHD or Tourette's but this might be due to an effective medication intervention. Nonetheless, (Plaintiff) does have signs of mild learning disability, but he is functional in general. With regard to his work related abilities, Dr. Whitehead stated that (Plain-

tiff) could perform simple repetitive tasks, and even a higher level of task as long as his academic skills are not stressed. His ability to complete simple and complex/detailed tasks is in the low average range, as are his ability to respond appropriately with others, respond to usual work conditions appropriately and to deal with changes in a routine work setting.

Dr. Sherman also noted that, although (Plaintiff's) treating records dated January 2006 show depressive symptoms, treating records dated August 30, 2006 show improvement and that (Plaintiff) denied current depressive symptoms. His thoughts were clear and his sleep and appetite were fine. He stated that he could play computer games.

Dr. Sherman also noted that (Plaintiff's) IEP report of May 3, 2006 showed that (Plaintiff) was thinking about attending community college and was kind, respectful and hard working, and it was reasonable to believe that (Plaintiff) would follow through on his future plans.

In summary, Dr. Sherman stated that (Plaintiff's) main impairment is (a) language processing problem. She noted that (Plaintiff's) Tourette's syndrome does not impose any danger to the public. Finally, (Plaintiff) can perform simple repetitive tasks on a sustained basis.

As for the opinion evidence, I have given the January 2, 2007 opinion from Dr. Hurwitz, a psychiatrist, significant weight as it was consistent with the testimony of the medical expert and with the opinion from Dr. Whitehead who had the opportunity to evaluate (Plaintiff). I have also given the opinion of Dr. Sherman significant weight.

7. (Plaintiff) has no relevant past work.

8. (Plaintiff) is currently a "younger individual age 18-44."

9. (Plaintiff) has a high school education with special education classes and is able to communicate in English.

10. Transferability of job skills is not an issue because (Plaintiff) does not have past relevant work.

11. Since attaining age 18, considering (Plaintiff's) age, education, work experience, and residual functional capacity, jobs have existed in significant numbers in the national economy that (Plaintiff) has been able to perform.

> Since attaining age 18, (Plaintiff's) ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the ALJ asked the vocational expert whether jobs exist in the national economy for an individual with (Plaintiff's) age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a hand packager, which is an unskilled medium job described at the DOT 920.587-018 and as a linen room attendant which is described at DOT 222.387-030 which is an unskilled medium job. Ms. Katsell also stated that (Plaintiff's) Tourette's syndrome would have no effect on his ability to perform these jobs.
>
> Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the DOT.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering (Plaintiff's) age, education, work experience, and residual functional capacity, (Plaintiff) is capable of making a successful adjustment to work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the testimony of the vocational expert's opinion.
>
> 12. (Plaintiff) has not been under a disability, as defined in the Social Security Act, since March 1, 2006, the day (Plaintiff) attained age 18, through the date of this decision.

(Tr. 11-15)(citations omitted.)

IV

<u>THE ALJ'S FINDINGS AND CONCLUSIONS ARE CONSISTENT WITH THE OPINION OF PLAINTIFF'S TREATING PHYSICIAN</u>

Plaintiff contends that the ALJ erred by failing to grant controlling weight to the opinion of Plaintiff's treating physician, Dr. Ashok Parameswaran. Defendant argues that Plaintiff fails to identify any conflict between Dr. Parameswaran's opinion and the ALJ's finding that Plaintiff can engage in simple repetitive work.

   Dr. Parameswaran's opinion, in the form of a one-page letter, states that Plaintiff's current diagnoses include Attention Deficit Hyperactivity Disorder (ADHD), Depression, Tourette's Syndrome, language processing disorders and various learning disorders including Dyslexia, involving reading, written expression and arithmetic. Further, Dr. Parameswaran states that Plaintiff's condition requires that he take medication on a regular basis, that he is compliant in taking his medication, and that his condition often leaves him overwhelmed by life's stressors and limits his ability to cope with significant changes in his daily routine. Dr. Parameswaran opines that Plaintiff will likely be able to maintain part-time, low stress level occupations. (Tr. 273).

   Here, Plaintiff does not indicate nor explain how Dr. Parameswaran's opinion conflicts with the ALJ's findings and conclusions. Rather, the ALJ specifically found, based on Dr. Sherman's review of Plaintiff's medical records, that Plaintiff suffers from Attention Deficit Hyperactivity Disorder (ADHD), depressive symptoms, Tourette's Syndrome, language processing disorders and learning disorders involving reading, spelling and mathematics. Further, the ALJ found Plaintiff's ability to appropriately respond to usual work conditions and to deal with changes in a routine work setting were in the low average range. Finally, the ALJ concluded that Plaintiff could perform simple repetitive tasks such as the tasks required of a hand packager and a linen room attendant. (Tr. 12-15).

   Pursuant to the Dictionary of Occupational Titles (hereafter, "DOT"), these occupations appear to involve low stress in that they involve performing repetitive work with little or no supervision.

(DOT 920.587-018 Hand Packager, DOT 222.387-030 Linen Room Attendant).

Therefore, the ALJ's findings and conclusions comport with, rather than conflict with, Dr. Parameswaran's opinion. Moreover, the Court can not find in the record any evidence upon which the ALJ relied which conflicts with Dr. Parameswaran's opinion.

While the ALJ did not mention Dr. Parameswaran's opinion, he did give significant weight to the opinion of Dr. Sherman. Dr. Sherman's opinion was substantially consistent with Dr. Parameswaran's opinion. Consequently, the Court can not find that the ALJ committed error in this regard. Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment in this regard be DENIED and Defendant's Motion for Summary Judgment in this regard be GRANTED.

V

### THE ALJ DID NOT ERR IN FAILING TO MENTION PLAINTIFF'S MOTHER'S STATEMENT

Plaintiff argues that the ALJ erred in ignoring the statement of Plaintiff's mother. (Tr. 128-136). Defendant argues that the ALJ was not obligated to address the statement of Plaintiff's mother because the statement is irrelevant to the time period under adjudication.

Plaintiff cites Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996), for the proposition that according to Social Security regulations, the "Commissioner's rulings require the ALJ to consider lay witness **testimony ...** *where a claimant alleged pain or other symptoms that 'are not supportable by medical evidence in the file,' the adjudicator shall obtain detailed descriptions of daily activities by directing specific inquiries about the pain and its*

effects... to third parties who would likely have such knowledge." (emphasis added in bold, italics in original). Plaintiff argues that the ALJ failed to comply with the dictates of <u>Smolen</u>.

However, <u>Smolen</u> is inapplicable to this case. <u>Smolen</u> discusses the **testimony** of the claimant's family members at the hearing before the ALJ in that case regarding the claimant's symptoms of fatigue and pain. Here, Plaintiff's mother did not **testify** at the hearing before the ALJ. Therefore, the statement of Plaintiff's mother is not **testimony**. Instead, it is simply a check-box questionnaire, dated December 14, 2005, that someone completed regarding Plaintiff's functionality. While the name of Plaintiff's mother is on the first page of the questionnaire, it is not signed by her, much less signed under penalty of perjury. Therefore, the Court can not consider the statement of Plaintiff's mother to be competent **testimony** which the ALJ was obligated to consider.

Additionally, the questionnaire does not supply information regarding Plaintiff's functionality between March 1, 2006 and the date of the hearing before the ALJ. Since the questionnaire does not address the relevant time period under consideration, the Court fails to see how the questionnaire is relevant to the ALJ's determination.

Further, while Plaintiff's mother's purported statement contains information regarding Plaintiff's functionality that does not appear in Plaintiff's medical records reviewed by the ALJ, that information is irrelevant to the proper adjudication of Plaintiff's claim. For example, some of the information contained in the statement is that Plaintiff can not tell time (Tr. 132), and can not make new friends (Tr. 133). This information has no bearing on the

ALJ's findings regarding Plaintiff's functional limitations and disability determination. Most, if not all of the balance of the information contained in the statement is indeed included in the medical records reviewed by the ALJ.

Moreover, even if the Court considers the purported statement of Plaintiff's mother to be competent testimony, (which it does not), the ALJ commits harmless error in failing to discuss competent lay testimony favorable to a claimant, unless the reviewing court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Commissioner, 454 F.3d 1050, 1056 (9th Cir. 2006). Here, Plaintiff does not indicate, nor can the Court find, that Plaintiff's mother's statement contains anything that the ALJ, or any reasonable ALJ, in fully crediting Plaintiff's mother's "testimony," could have reached a different disability determination. In fact, Plaintiff concedes that his "mother's statement corroborates the severe medical impairments found by the ALJ in communication, understanding and social behavior, maintain attention." (Memo of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment at 5-6).

Consequently, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment in this regard be DENIED and Defendant's Motion for Summary Judgment in this regard be GRANTED.

## VI

### THE ALJ'S REASONS FOR DISCREDITING PLAINTIFF'S TESTIMONY WAS LEGALLY SUFFICIENT

Plaintiff argues that the ALJ's reasons for discrediting his allegations with regard to his limitations was legally insufficient.

Defendant argues that the ALJ properly addressed Plaintiff's credibility.

Plaintiff testified at the hearing that he suffers from Tourette's Syndrome which manifests itself by daily yelling, making random loud noises and making irregular body movements, but that these symptoms did not manifest while he was at a previous job that he had held. (Tr. 34-35).

When an ALJ evaluates a claimant's subjective symptom testimony, he/she must perform two stages of analysis: the Cotton[2/] test and an analysis of Plaintiff's credibility. Smolen, 80 F.3d at 1281-82. The Cotton test requires the ALJ to determine whether the claimant has produced objective medical evidence of an underlying impairment and whether the symptoms alleged could reasonably be produced by the impairment. Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991). If the claimant meets the Cotton test, and there is no evidence of malingering, the ALJ must offer specific, clear and convincing reasons to reject Plaintiff's symptom testimony. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ found that Plaintiff satisfied the Cotton test because he presented objective medical evidence that could reasonably produce his self-reported symptoms. The ALJ determined that Plaintiff suffered from Tourette's Syndrome (Tr. 12), and that Tourette's Syndrome could reasonably be expected to produce the symptoms about which Plaintiff testified. (Tr. 13).

The ALJ did not find that Plaintiff was malingering, nor did any of the presented evidence suggest that he was doing so.

---

[2/] In Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986), the court set out a threshold test for evaluating symptom testimony.

Therefore, the ALJ may reject Plaintiff's testimony only if he/she provides clear and convincing reasons. Smolen, 80 F.3d at 1282-84. Some factors the ALJ may consider to determine the credibility of Plaintiff's testimony include: 1) the claimant's reputation for lying, prior inconsistent statements and other testimony from the plaintiff that appears less candid; 2) unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment; or 3) claimants daily activities. Id. at 1284. The ALJ's determination or decision must contain specific reasons for findings on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 1989). "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for (Social Security) benefits. Warre v. Commissioner 439 F.3d 1001, 1006 (9th Cir. 2006).

Here, the ALJ discredited Plaintiff's testimony regarding the intensity, persistence and limiting effects of his symptoms of Tourette's Syndrome for two reasons:

First, the ALJ noted that Plaintiff is being effectively treated for all of the symptoms of all his disorders, including the symptoms of Tourette's Syndrome. Further, the ALJ noted that Plaintiff has no restrictions in the activities of daily living and no difficulties in social functioning. The ALJ also noted that Plaintiff has mild difficulties with regard to concentration, persistence and pace. (Tr. 12, 13, 29-30).

      Second, the ALJ discredited Plaintiff's testimony regarding the intensity, persistence and limiting effects of his symptoms of Tourette's Syndrome because Dr. Sherman noted that Plaintiff's symptoms of Tourette's Syndrome were being effectively treated with medications. (Tr. 13).  Plaintiff also so testified at the hearing. (Tr. 29-30).  Additionally, Plaintiff testified that the symptoms of Tourette's Syndrome did not manifest when he was working at a previous job. (Tr. 35).  Further, Dr. Sherman noted that Plaintiff suffers from a mild form of Tourette's Syndrome. (Tr. 13). Additionally, Dr. Sherman noted that Plaintiff's school reports indicate that he is sweet, courteous and well behaved. (Tr. 13). Moreover, Dr. Sherman noted that Plaintiff is considering attending community college, and is kind, respectful and hard working. (Tr. 14).

      Dr. Sherman's assessment of Plaintiff and Plaintiff's own testimony amount to clear and convincing evidence that Plaintiff's testimony regarding the effects of the symptoms of Tourette's Syndrome were not credible.  Since Plaintiff was being effectively medically treated for the symptoms of Tourette's Syndrome, has no difficulties in activities of daily living and social functioning, was found to be courteous, well behaved and hard working, it was reasonable for the ALJ to discredit Plaintiff's testimony in this regard.

      As a result, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment in this regard be DENIED and Defendant's Motion for Summary Judgment be GRANTED.[3]

---

[3] Section E of Plaintiff's Memorandum of Points and Authorities at pp. 11-13 repeats much of the same argument that Plaintiff posits in Section C of the Memorandum of Points and Authorities (continued) (continued)

# VII

## THE ALJ DID NOT ERR IN RELYING ON THE TESTIMONY OF THE VOCATIONAL EXPERT

### 1. Reasoning Levels

Plaintiff argues that the ALJ erred when he relied on the vocational expert's testimony. Specifically, Plaintiff argues that while Dr. Sherman limited Plaintiff to simple repetitive work, the ALJ cited two jobs that Plaintiff could perform, based on the vocational expert's testimony, that require reasoning levels of 2 and 3, which Plaintiff does not have. Defendant argues that the jobs about which the vocational expert testified, and the ALJ adopted, are consistent with Plaintiff's reasoning level.

At the hearing, the vocational expert testified that Plaintiff could perform the work of a hand packager and linen room attendant. (Tr. 50). The reasoning level required of a hand packager is "Level 2 – Apply common sense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving concrete variables in or from standardized situations." (DOT 920.587-018 Hand Packager). The reasoning level for a linen room attendant is "Level 3 – Apply common sense understanding to carry out instructions furnished in written, oral or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." (DOT 222.387-030 Linen Room Attendant).

In this case, Dr. Sherman limited Plaintiff to simple repetitive work. Contrary to Plaintiff's contention, there is no conflict between simple repetitive work and reasoning levels of 2

---

at pp. 7-9. To the extent the argument in Section E is not discussed in this section of this Report and Recommendation, see Section VII of this Report and Recommendation.

and 3 that the DOT assigns to the hand packager and linen attendant jobs. Several courts have rejected Plaintiff's assertion that reasoning levels of 2 and 3 preclude simple repetitive work. <u>Renfrow v. Astrue</u>, 496 F.3d 918, 921 (8th Cir. 2007); <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1176 (10th Cir. 2005); <u>Meissl v. Barnhart</u>, 403 F. Supp. 2d 981, 983-986 (C.D. Cal. 2005); <u>Perry v. Astrue</u>, 2009 WL 435123 (S.D. Cal., February 19, 2009); <u>Moua v. Astrue</u>, 2009 WL 997104 (E.D. Cal., April 14, 2009). Based on these cases, the Court rejects Plaintiff's assertion.

Therefore, the ALJ did not err in relying on the testimony of the vocational expert. The jobs about which the vocational expert testified, and the ALJ adopted, are consistent with Plaintiff's reasoning levels and limitation of simple repetitive work. Consequently, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment in this regard be DENIED and Defendant's Motion for Summary Judgment in this regard be GRANTED.

2. <u>Symptoms of Tourette's Syndrome</u>

Plaintiff argues that the ALJ erred by failing to ask the vocational expert whether Plaintiff's symptoms of Tourette's Syndrome affected her opinion, making incomplete his hypothetical question to her. Defendant contends that Plaintiff's argument misconstrues the record.

At the hearing, the vocational expert opined that Plaintiff could perform the work of a hand packager and linen room attendant. (Tr. 50). Then, the following question was asked: "The same limitations that the Judge had indicated to you, but add a hypothetical individual that, at times, has *uncontrolled* Tourette's Syndrome symptoms such as verbal tics, grunting, maybe some shaking. Would

that affect any of the jobs (the individual would) be able to do?" The vocational expert's response to this hypothetical question was, "No." (Tr. 51)(emphasis added).

Here, it is clear that the vocational expert specifically testified that an individual with symptoms of Tourette's Syndrome could perform the jobs of hand packager and linen room attendant. Further, the vocational expert specifically testified that an individual with *uncontrolled* symptoms of Tourette's Syndrome could perform the jobs of a hand packager and linen room attendant. In this case, Plaintiff's symptoms of Tourette's Syndrome were *not uncontrolled*. Instead, Dr. Sherman testified that Plaintiff's symptoms of Tourette's Syndrome were mild and effectively controlled by medication. Therefore, the Court reasons that if an individual with *uncontrolled* symptoms of Tourette's Syndrome could perform the work of a hand packager and linen room attendant, the vocational expert's response to a hypothetical question would be the same if the individual's symptoms of Tourette's Syndrome were, in fact, *controlled.* Therefore, Plaintiff's assertion that the ALJ failed to elicit testimony from the vocational expert regarding the effect of symptoms of Tourette's Syndrome on her opinion of what jobs Plaintiff could do, is erroneous. As a result, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment in this regard be DENIED and Defendant's Motion for Summary Judgment in this regard be GRANTED.

VIII

CONCLUSION AND RECOMMENDATION

After a review of the record in this matter, the undersigned Magistrate Judge RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED.

This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than August 16, 2010, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than September 7, 2010. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 26, 2010

Hon. William V. Gallo
U.S. Magistrate Judge